[Cite as *In re T.G.*, 2013-Ohio-2680.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | |
|---|---|
| IN RE: T.G. | JUDGES:<br>Hon. William B. Hoffman, P.J.<br>Hon. John W. Wise, J.<br>Hon. Patricia A. Delaney, J.<br><br>Case No. 2013CA00047<br><br>O P I N I O N |

| | |
|---|---|
| CHARACTER OF PROCEEDING: | Appeal from the Stark County Court of Common Pleas, Family Court Division, Case No. 2011JCV00077 |
| JUDGMENT: | Affirmed |
| DATE OF JUDGMENT ENTRY: | June 24, 2013 |
| APPEARANCES: | |

| For Appellee | For Appellant |
|---|---|
| LISA A. LOUY<br>STARK COUNTY JFS<br>221 Third Street SE<br>Canton, Ohio 44702 | AARON KOVALCHIK<br>116 Cleveland Ave NW<br>Suite 808<br>Canton, Ohio 44702 |

*Hoffman, P.J.*

{¶1} Appellant Frank Mason ("Father") appeals the February 7, 2013 Judgment Entry and the February 7, 2013 Findings of Fact and Conclusions of Law, which terminated his parental rights, privileges and responsibilities with respect to his minor child, and granted permanent custody of the child to appellee Stark County Department of Job and Family Services ("SCDJFS").

STATEMENT OF THE FACTS AND CASE

{¶2} Father and Scarlett Grit[1] are the biological parents of T.G. (dob 1/14/11). The parents are not married. On January 18, 2011, SCDJFS filed a complaint alleging T.G. was a dependent, neglected, and abused child. The child was placed in the temporary custody of SCDJFS following an emergency shelter care hearing on January 19, 2011.

{¶3} SCDJFS filed a case plan on February 10, 2011. The magistrate conducted a hearing on March 10, 2011, and found T.G. dependent. The magistrate ordered T.G. remain in the temporary custody of SCDJFS.

{¶4} In early May, 2011, genetic testing confirmed Father was the biological father of T.G. Father began working on his case plan in July, 2011. Father's case plan initially required him to complete a drug and alcohol assessment at Quest and a parenting evaluation at Northeast Ohio Behavioral Health, and follow all recommendations. After the assessments were completed, the recommendations were incorporated into Father's case plan. Specifically, Father was required to complete the Multiple Offender Program at Quest, complete Goodwill Parenting, engage in individual

---

[1] Scarlett Grit is not a party to this Appeal.

counseling, undergo anger management, and complete the intensive parent-child interaction program upon completion of the Goodwill parenting classes.

{¶5} A dispositional review hearing was conducted on July 6, 2011. The case plan review packet was approved and adopted, and the status quo continued. SCDJFS filed a motion for permanent custody on August 25, 2011. Father filed a motion for extension of temporary custody on September 22, 2011. The trial court conducted a hearing on the motions on September 29, 2011. SCDJFS withdrew the motion for permanent custody. The trial court granted Father's motion to extend temporary custody, and scheduled an annual review hearing for December 12, 2011. SCDJFS subsequently filed a motion to extend temporary custody, which the trial court granted. Prior to a dispositional review hearing on June 6, 2012, SCDJFS filed another motion to extend temporary custody. The trial court extended temporary custody to January 14, 2013.

{¶6} SCDJFS filed a motion for permanent custody on December 3, 2012. The trial court scheduled the motion for hearing on January 30, 2013.

{¶7} Kristal Brown, the ongoing caseworker, testified T.G. was placed in the temporary custody of SCDJFS on March 10, 2011, and had not been removed from the agency's custody since that day. As such, at the time of the hearing, T.G. had been in the temporary custody of SCDJFS for a period of twelve or more months of a consecutive twenty-two month period.

{¶8} Brown testified Father completed a parenting evaluation at Northeast Ohio Behavioral Health. As the result of the evaluation, it was recommended Father complete the Multiple Offender Program at Quest, Goodwill Parenting, Intensive Parent

Child Intervention, anger management, and individual counseling. Father completed the Multiple Offender Program at Quest. He completed the Goodwill Parenting in January, 2012. However, Father was not consistent in starting and completing services upon first attempts. At the time of the hearing, Father had completed half of the Intensive Parent Child Intervention Program. He had commenced anger management classes, but had been terminated. Father had reinitiated the classes on November 29, 2012. Father informed Brown he was attending individual counseling, but the caseworker was unable to verify the claim.

{¶9} Father lived with his wife and her three children. Both adults were unemployed. Father had not been employed throughout the pendency of the case. Father was living on monies received from student loans, however, he was not attending college.

{¶10} Visits between Father and T.G. occurred sporadically. Father did not visit the child between January, 2012, and March, 2012. He then began to visit regularly, however, he again started to miss visits. Brown changed Father's visitation from weekly to bi-weekly. Brown indicated Father was currently doing well while visiting at the Intensive Parent Child Intervention Program. Brown noted Father visited T.G. consistently when he was following his case plan, but failed to visit under his own volition.

{¶11} Amy Humrighouse, the Goodwill Parenting instructor, testified Father completed the program successfully. Humrighouse expressed concern regarding the conditions of Father's residence. During a scheduled home visit, Humrighouse found the home unclean and cluttered, and there were cat litter boxes overflowing with feces.

She found spoiled food during her check of the kitchen. At the time of the hearing, Father was living in a different residence. Caseworker Brown visited Father's current residence and found it clean and orderly.

{¶12} During the pendency of the case, Father claimed, on several occasions, he had not received a copy of his case plan. The trial court addressed the case plan requirements with Father on December 12, 2011, January 22, 2012, July 12, 2012, and November 1, 2012.

{¶13} Dr. Aimee Thomas with Northeast Ohio Behavioral Health testified she conducted Father's parenting evaluation. Father advised Dr. Thomas he had a prior diagnosis of anti-social disorder. The results of the IQ test indicated Father was of average ability and was, therefore, competent to parent based upon IQ alone. Father grew up in a dysfunctional home and lived for a period of time in group homes. Dr. Thomas recommended a number of services and programs for father. She stated Father would not be appropriate to parent if he did not complete the recommended case plan services.

{¶14} With respect to best interest, Brown testified T.G. is a two year old Caucasian boy who has no developmental, behavioral or medical delays, and is "perfectly healthy." T.G. was in a foster-to-adopt home with a biological sibling, and had been with his foster family since the commencement of the case. Brown noted the foster home is appropriate. T.G. is bonded to the family, and the family is bonded to him. T.G., his sibling, and the foster parents' daughter are bonded and very close. SCDJFS investigated possible relative placement. T.G.'s maternal grandmother had

been denied placement of T.G.'s sibling in a separate matter. Brown explained the first denial would be ground for denial in the current case involving T.G.

{¶15} The guardian ad litem submitted a written report, recommending SCDJFS be granted permanent custody as such would be in T.G.'s best interest.

{¶16} Via Judgment Entry filed February 7, 2013, the trial court terminated Father's parental rights, privileges and responsibilities in regard to T.G., and granted permanent custody of the child to SCDJFS. The trial court also issued Findings of Fact and Conclusions of Law. The trial court found T.G. could not be placed with Father within a reasonable time and should not be placed with Father. The trial court also found T.G. had been in the temporary custody of SCDJFS for twelve or more months of a consecutive twenty-two month period, and Father had continuously and repeatedly failed for a period of six or more months to remedy the conditions which caused the outside placement. The trial court further determined a grant of permanent custody to SCDJFS would be in T.G.'s best interest.

{¶17} It is from this judgment entry Father appeals:

{¶18} "I. THE JUDGMENT OF THE TRIAL COURT THAT THE MINOR CHILD CANNOT OR SHOULD NOT BE PLACED WITH APPELLANT WITHIN A REASONABLE TIME WAS AGAINST THE MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE.

{¶19} "II. THE JUDGMENT OF THE TRIAL COURT THAT THE BEST INTERESTS OF THE MINOR CHILD WOULD BE SERVED BY THE GRANTING OF PERMANENT CUSTODY WAS AGAINST THE MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE."

**{¶20}** This case comes to us on the expedited calendar and shall be considered in compliance with App. R. 11.2(C).

I, II

**{¶21}** In his first assignment of error, Father maintains the trial court's finding the child could not be placed with him within a reasonable time was against the manifest weight and sufficiency of the evidence. In his second assignment of error, Father contends the trial court's finding an award of permanent custody was in the best interest of the child was against the manifest weight and sufficiency of the evidence.

**{¶22}** As an appellate court, we neither weigh the evidence nor judge the credibility of the witnesses. Our role is to determine whether there is relevant, competent and credible evidence upon which the fact finder could base its judgment. *Cross Truck v. Jeffries* (Feb. 10, 1982), Stark App. No. CA5758. Accordingly, judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed as being against the manifest weight of the evidence. *C.E. Morris Co. v. Foley Constr.*, 54 Ohio St.2d 279, 376 N.E.2d 578 (1978).

**{¶23}** R.C. 2151.414 sets forth the guidelines a trial court must follow when deciding a motion for permanent custody. R.C. 2151.414(A)(1) mandates the trial court schedule a hearing and provide notice upon the filing of a motion for permanent custody of a child by a public children services agency or private child placing agency that has temporary custody of the child or has placed the child in long-term foster care.

**{¶24}** Following the hearing, R.C. 2151.414(B) authorizes the juvenile court to grant permanent custody of the child to the public or private agency if the court determines, by clear and convincing evidence, it is in the best interest of the child to

grant permanent custody to the agency, and that any of the following apply: (a) the child is not abandoned or orphaned, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents; (b) the child is abandoned; (c) the child is orphaned and there are no relatives of the child who are able to take permanent custody; or (d) the child has been in the temporary custody of one or more public children services agencies or private child placement agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999.

{¶25} In determining the best interest of the child at a permanent custody hearing, R.C. 2151.414(D) mandates the trial court must consider all relevant factors, including, but not limited to, the following: (1) the interaction and interrelationship of the child with the child's parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child; (2) the wishes of the child as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child; (3) the custodial history of the child; and (4) the child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grat of permanent custody.

{¶26} Therefore, R.C. 2151.414(B) establishes a two-pronged analysis the trial court must apply when ruling on a motion for permanent custody. In practice, the trial court will usually determine whether one of the four circumstances delineated in R.C. 2151.414(B)(1)(a) through (d) is present before proceeding to a determination regarding the best interest of the child.

{¶27} If the child is not abandoned or orphaned, the focus turns to whether the child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents. Under R.C. 2151.414(E), the trial court must consider all relevant evidence before making this determination. The trial court is required to enter such a finding if it determines, by clear and convincing evidence, that one or more of the factors enumerated in R.C. 2151.414(E)(1) through (16) exist with respect to each of the child's parents.

{¶28} Father does not appeal the trial court's finding the child had been in the temporary custody of SCDJFS for twelve of a consecutive twenty-two month period pursuant to R.C. 2151.414(B)(1)(d).  This finding is sufficient on its own to establish the first prong of the permanent custody analysis and to sustain the decision of the trial court. Nonetheless, we shall address the merits of Father's first assignment of error with respect to the trial court's finding the child could not be placed with him within a reasonable time.

{¶29} As set forth in our Statement of the Facts and Case, supra, Father failed to remedy the problems which initially caused the removal of the child from the home. Father was not consistent with his case plan.  Father had started and stopped the Multiple Offender Program on several occasions.  Father completed the program only after being notified he was about to be terminated from it, and being advised by SCDJFS the agency had filed a motion for permanent custody.  Father completed Goodwill Parenting.  SCDJFS initiated services for Father in July, 2011, however, Father did not regularly attend until September or October, 2011.  Father had been

terminated from anger management, but was reinitiated on November 29, 2012, days before SCDJFS filed the motion for permanent custody.

{¶30} Father was not employed during the pendency of the case. He was living on student loans, however, he was not attending school. Father owed child support for another child, but was not consistent with those payments. The Goodwill instructor had concerns regarding the condition of the home. The caseworker testified Father and his wife were living in a different residence at the time of the trial, and such was clean and orderly.

{¶31} Father was not consistent with visitation. He was only consistent when visitation was incorporated into his parenting programs. Dr. Thomas was "absolutely" concerned about returning the child to Father if Father did not complete his case plan services.

{¶32} With respect to the best interest finding, the evidence revealed T.G. was a healthy Caucasian child with no identified health needs or developmental delays. T.G. was in a foster to adopt home and the family wished to adopt him. T.G. had been with the family since his release from the hospital following his birth. The family previously had adopted one of T.G.'s biological siblings who had been removed from the home. T.G. is bonded with his sibling, his foster parents, and the daughter of the foster parents.

{¶33} Based upon the foregoing, we find the trial court's findings the child could not be placed with Father within a reasonable time, and an award of permanent custody was in the best interest of the child were not against the manifest weight of the evidence

and were based upon sufficient evidence. Father's first and second assignments of error are overruled.

{¶34} The judgment of the Stark County Court of Common Pleas, Family Court Division, is affirmed.

By: Hoffman, P.J.

Wise, J. and

Delaney, J. concur

s/ William B. Hoffman_____
HON. WILLIAM B. HOFFMAN

s/ John W. Wise _____
HON. JOHN W. WISE

s/ Patricia A. Delaney_____
HON. PATRICIA A. DELANEY

IN THE COURT OF APPEALS FOR STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

IN RE: T.G.                                    :
                                               :
                                               :
                                               :          JUDGMENT ENTRY
                                               :
                                               :
                                               :          Case No. 2013CA00047


For the reasons stated in our accompanying Opinion, the judgment of the Stark

County Court of Common Pleas, Family Court Division, is affirmed.  Costs to Appellant.



s/ William B. Hoffman_____
HON. WILLIAM B. HOFFMAN


s/ John W. Wise_____
HON. JOHN W. WISE


s/ Patricia A. Delaney_____
HON. PATRICIA A. DELANEY